■ In the Matter of JAMIL M. ABRAHAM, Petitioner, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.—Mahoney, P. J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which suspended petitioner's license to practice medicine in New York for two years, with the suspension stayed and petitioner placed on probation for two years.

Petitioner seeks review of a finding of unprofessional conduct in that he demonstrated a willful or grossly negligent failure to comply with substantial provisions of State law,

rules or regulations governing the billing practices of the Medicaid program supervised by the Department of Social Services (DSS).

DSS instituted a proceeding against petitioner by notice dated April 6, 1981 in which DSS charged that petitioner was guilty of "unacceptable practices". Specifically, petitioner was charged with improperly billing for tine tests he failed to read or analyze; improperly billing for "new illness visits" when he should have billed only for "follow-up visits", and billing for diagnostic history and physical examination instead of "routine office visits". In addition, there were other charges preferred against petitioner that were eventually dismissed. Ultimately, following an administrative hearing, DSS found petitioner guilty of the above-mentioned charges, censured him and ordered him to return $13,468.36 in overpayments. Petitioner did not appeal from this determination.

In early 1984, the State Board for Professional Medical Conduct served petitioner with its own statement of charges which included, *inter alia,* a "fifth specification" which was predicated on the three sustained DSS charges. This specification charged that petitioner was guilty of professional misconduct within the meaning of Education Law § 6509 (9) in that his professional practice demonstrated unprofessional conduct (8 NYCRR 29.1 [b] [1]) due to his allegedly willful failure to comply with the billing procedures of the Medicaid program. A hearing committee issued a finding sustaining the charge contained in the fifth specification based on the DSS charges and dismissing the others. The hearing committee recommended that petitioner receive a censure and reprimand. The Regents Review Committee agreed, but recommended that petitioner's license be suspended for two years, with the penalty stayed and petitioner placed on probation for two years.

On July 22, 1986, respondent Board of Regents found petitioner guilty of the single charge of unprofessional conduct as recommended by the hearing committee and, as recommended by the Regents Review Committee, suspended petitioner's license for two years, but stayed the execution thereof and placed petitioner on probation. These findings and the penalty, as stayed, were confirmed by respondent Commissioner of Education.

Initially, we find that the disciplinary action by DSS does not bar respondents from finding petitioner guilty of violating their regulations based on the same activity, so long as

substantial evidence supports that finding. Respondents are not trying to discipline petitioner for violating DSS regulations governing Medicaid billing but, rather, are trying to discipline him for allegedly violating their own rules governing his practice as a physician, a responsibility that is exclusively the duty of the Board of Regents *(see, Matter of Axelrod v Ambach,* 126 AD2d 288).

Next, we must deal with the collateral estoppel effect of the DSS determination. Since petitioner had a full and fair opportunity to litigate the issues at that hearing, the matters which DSS "necessarily decided" are entitled to collateral estoppel effect *(see, Matter of Engel v Calgon Corp.,* 114 AD2d 108, 110, *affd* 69 NY2d 753). Specifically, the pure or evidentiary facts found by DSS, i.e., the incorrect billings, are entitled to collateral estoppel effect. However, the ultimate conclusion of DSS that petitioner committed "unacceptable practices" is not *(see, supra).* Therefore, the question to be resolved upon appeal is whether the findings which supported the DSS determination of "unacceptable practices" can support the charge of "unprofessional conduct" by respondents based upon the same activity.

Affirmance of respondents' discipline of petitioner for violating rules and law governing the practice of medicine depends upon whether substantial evidence exists to show that petitioner *willfully* failed to comply with Medicaid's billing procedures (8 NYCRR 29.1 [b] [1]). In order to be "willful", an act must be "knowing, intentional or deliberate" *(Matter of Brestin v Commissioner of Educ. of State of N. Y.,* 116 AD2d 357, 359; *see,* Black's Law Dictionary 1434 [5th ed 1979]). The findings in the DSS proceeding did not conclude that petitioner acted willfully and the definition of an unacceptable practice contained in 18 NYCRR former 515.1 (a) does not require a like state of mind to support a determination thereunder.

While evidence of a state of mind is almost always indirect *(see, Matter of Damino v Board of Regents,* 124 AD2d 271, 273), we find nothing in the instant record to support respondents' finding that petitioner willfully violated the Medicaid laws. In fact, DSS found that petitioner's errors were clerical in nature and were not done in bad faith or with intent to defraud. Moreover, nothing introduced at the hearing contradicts these findings. Finally, we reject respondents' contention that willfulness can be inferred from the bare fact that petitioner was found guilty of overcharging. Without any evidence of intent or knowledge or wrongdoing, the Commis-

sioner's determination must be annulled *(see, Matter of Brestin v Commissioner of Educ. of State of N. Y., supra,* at 359).

Determination annulled, with costs, and matter remitted to respondent Commissioner of Education for further proceedings not inconsistent herewith. Mahoney, P. J., Kane, Casey, Weiss and Harvey, JJ., concur.